## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| JESSICA CHISENALL, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | |
| LOVE'S TRAVEL STOPS & | ) | |
| COUNTRY STORES, INC., | ) | _____ |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiff JESSICA CHISENALL hereby states claims for relief under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended

("Title VII"), and Georgia law on the grounds stated below.

### ***Jurisdiction and Venue***

1.     The Court has original subject-matter jurisdiction pursuant to (a)

28 U.S.C. § 1331 because this action arises under the laws of the United

States, (b) 28 U.S.C. § 1337 because this action arises under Acts of Congress

regulating commerce, and (c) 42 U.S.C. § 2000e-5(f)(3) because this action is

brought under Subchapter VI of Title VII.  The Court has supplemental

jurisdiction over all of Plaintiff CHISENALL's state-law claims under

Georgia law, pursuant to 29 U.S.C. § 1367, because the state-law claims are

so related to the Plaintiff's claims within the Court's original jurisdiction that

such state-law claims form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims in this action occurred in the Northern District of Georgia, Rome Division.

### *The Parties*

3.      Plaintiff JESSICA CHISENALL ("PLAINTIFF") is a citizen of the state of Georgia and the United States and resides in the Northern District of Georgia, Rome Division.

4.      Defendant LOVE'S TRAVEL STOPS & COUNTRY STORES, INC. ("DEFENDANT") is an Oklahoma for-profit corporation doing business in the state of Georgia in the Northern District of Georgia, Rome Division.

5.      DEFENDANT can be served with process through its registered agent: CT Corporation System, 289 Culver St., Lawrenceville, GA 30046-4805.

6.      DEFENDANT is subject to the personal jurisdiction of this Court.

### *Compliance With Administrative Prerequisites*

7.      PLAINTIFF has timely complied with all legally required administrative prerequisites before filing this action.

8.      On or about August 18, 2020, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") alleging discrimination by DEFENDANT on account of

PLAINTIFF's sex and unlawful retaliation by DEFENDANT.

9.     On or about May 25, 2021, the EEOC issued to PLAINTIFF a

notice of dismissal and right to sue DEFENDANT.

### ***Grounds for this Action***

10.     PLAINTIFF is a Caucasian female.

11.     On or about November 2019, DEFENDANT hired PLAINTIFF to

work in its store located at 1801 Belwood Road, SE, Calhoun, Georgia 30701

as an hourly worker.

12.     On or about July 2020, PLAINTIFF quit her job with

DEFENDANT.

13.     From on or about November 2019 to on or about July 2020,

PLAINTIFF had been continuously employed by DEFENDANT.

14.     Since at least on or about November 2019 to at least July 2020,

DEFENDANT was an "employer" within the meaning of 42 U.S.C. § 2000e(b)

of Title VII.

15.     Since at least on or about November 2019 to at least July 2020,

DEFENDANT engaged in an industry affecting commerce within the

meaning of 42 U.S.C. § 2000e(b) of Title VII.

16.     Since at least on or about November 2019 to at least July 2020,

DEFENDANT employed 15 or more employees for each working day in each

of 20 or more calendar weeks in the current or preceding calendar year within the meaning of 42 U.S.C. § 2000e(b) of Title VII.

17.    Since at least on or about November 2019 to at least July 2020, DEFENDANT had more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year within the meaning of 42 U.S.C. § 1981a.

18.    Since at least on or about November 2019 to at least July 2020, PLAINTIFF has been an "employee" of DEFENDANT within the meaning of 42 U.S.C. § 2000e(f) of Title VII.

19.    During PLAINTIFF's employment by DEFENDANT, PLAINTIFF was 21 years old.

20.    During PLAINTIFF's employment by DEFENDANT, PLAINTIFF was sexually harassed over an approximately two-month period by Dennis Brown, a Caucasian store manager for DEFENDANT, who is in his 60s.

21.    Brown's sexual harassment of PLAINTIFF started shortly after DEFENDANT hired Brown to be a manager on PLAINTIFF's shift, on or about March 2020.

22.    Brown's sexual harassment of PLAINTIFF ended once DEFENDANT fired Brown, on or about the end of May 2020.

23.     Brown's outrageous sexually offensive and unwelcomed conduct toward PLAINTIFF included engaging in sexually offensive and unwelcomed conduct on DEFENDANT's premises.

24.     Brown's outrageous sexually offensive and unwelcomed conduct toward PLAINTIFF occurred when they worked on the overnight shift, which was from 10:50 p.m. to 7:20 a.m.

25.     Brown's outrageous sexually offensive and unwelcomed conduct toward PLAINTIFF occurred ***multiple times during each shift*** that he and PLAINTIFF worked together, ***multiple days*** per week.

26.     The outrageous sexually offensive and unwelcomed conduct that Brown directed to PLAINTIFF includes but is not limited to:

> (a)     Asking PLAINTIFF for sex—multiple times during each shift they worked together;
>
> (b)     Asking PLAINTIFF, "will you have sex with me";
>
> (c)     Asking PLAINTIFF, "will you go down on me";
>
> (d)     Asking PLAINTIFF, "will you suck my dick";
>
> (e)     Asking PLAINTIFF to show him pictures of PLAINTIFF posing on the beach;
>
> (f)     Asking PLAINTIFF to bend over, suggesting he wanted to have sex with PLAINTIFF;
>
> (g)     Asking PLAINTIFF to go to the tire shop to "hang out" with him and winking, suggesting he wanted to have sex with PLAINTIFF;

(h)   Brushing his hand along PLAINTIFF's lower back;

(i)   After overhearing PLAINTIFF telling a co-worker that PLAINTIFF was pregnant, asking PLAINTIFF if he could rub her belly;

(j)   Following PLAINTIFF around the store for no business reason—merely in order to stare at PLAINTIFF.

27.   Brown sent PLAINTIFF a text message on one occasion during non-work hours that PLAINTIFF found disturbing because she never gave Brown her cell phone number and Brown had no authority to access PLAINTIFF's personal information from DEFENDANT.

28.   PLAINTIFF told Brown to stop his sexually offensive conduct toward her, but his sexually offensive and unwelcomed conduct continued.

29.   During the period Brown sexually harassed PLAINTIFF, three female employees told PLAINTIFF that Brown had sexually harassed them.

30.   Brown retaliated against PLAINTIFF after she rejected his sexual advances, including but not limited to: being rude to PLAINTIFF; not assisting PLAINTIFF during her shift; and giving PLAINTIFF additional tasks requiring her to stay late after her normal hours.

31.   Within the *first week* that Brown began sexually harassing PLAINTIFF, she complained about Brown's sexual harassment to Shawna Carter, a DEFENDANT manager on the day shift.

32.     The day after complaining to Ms. Carter, PLAINTIFF complained about Brown's sexual harassment to Scott Akers, DEFENDANT's store General Manager.

33.     During PLAINTIFF's meeting with Mr. Akers, he took notes.

34.     During PLAINTIFF's meeting with Mr. Akers, John Lamaison, DEFENDANT's store Operations Manager, was present.

35.     During PLAINTIFF's meeting with Mr. Akers, she made clear to Mr. Akers that Brown had asked her for sex and had made other sexually offensive comments of a sexual nature, and she gave specific examples of those comments.

36.     During PLAINTIFF's meeting with Mr. Akers, PLAINTIFF told Mr. Akers that Brown's conduct made her feel uncomfortable, that she did not want to work with him anymore and that she wanted to be moved to another shift.

37.     During PLAINTIFF's meeting with Mr. Akers, PLAINTIFF also told Mr. Akers about other female employees who complained to PLAINTIFF about being sexually harassed by Brown, including Samantha Nix, Kayla Dobson, and Kay Love.

38.     During PLAINTIFF's meeting with Mr. Akers, he told PLAINTIFF that she needed to be *"patient"* while he conducted an investigation.

39.     Instead of *immediately* separating PLAINTIFF and Brown, Mr. Akers forced PLAINTIFF to *continue working* with Brown for approximately the *next two months*, during which Brown continued sexually harassing PLAINTIFF.

40.     A few weeks after PLAINTIFF first complained to Mr. Akers, PLAINTIFF *again complained* to Mr. Akers—making clear that Brown's offensive sexual comments had not stopped, that she did not want to work with him, and that she wanted to be placed on a different shift.

41.     During this conversation, PLAINTIFF also told Mr. Akers that Jessica Bomar, another DEFENDANT employee, had complained to PLAINTIFF about receiving sexually offensive text messages from Brown.

42.     Mr. Akers told PLAINTIFF that he was *aware* of Brown's text messages to Ms. Bomar.

43.     Mr. Akers again told PLAINTIFF to be "*patient*" but otherwise *took no action against Brown*—thereby subjecting PLAINTIFF to further sexual harassment by Brown.

44.      In early April 2020, Jessica Bomar complained to her shift leader, Tess Standridge, that Brown had sent Ms. Bomar a sexually offensive text message.

45.     Ms. Standridge *admitted* to Ms. Bomar that Ms. Standridge was *aware* Brown was sexually harassing PLAINTIFF.

- 8 -

46.   DEFENDANT took *no action* against Brown regarding Ms. Bomar's complaint about Brown, who, over the next month, continued to send Ms. Bomar offensive text messages.

47.   In early May 2020, Ms. Bomar *again complained* to DEFENDANT management about Brown's sexually offensive text messages, this time to Marie Winkle, another shift leader.

48.   Ms. Bomar threatened to contact DEFENDANT's human resources department about Brown's offensive conduct.

49.   Ms. Winkle took screen shots of the text messages and sent them Mr. Akers, DEFENDANT's store General Manager.

50.   Ms. Winkle told Ms. Bomar that Mr. Akers had received the screen shots and that Mr. Akers said Ms. Bomar should not complain to DEFENDANT's human resources department.

51.   Brown's sexual harassment of Ms. Bomar *continued*.

52.   Ms. Bomar subsequently complained directly to DEFENDANT managers John Lamaison and Mr. Akers about Brown's offensive conduct.

53.   Only after *multiple complaints* by Ms. Bomar and PLAINTIFF to DEFENDANT management did DEFENDANT finally fire Brown.

54.   DEFENDANT management retaliated against PLAINTIFF after she complained that Brown sexually harassed her.

55.    After PLAINTIFF complained to DEFENDANT managers Mr. Akers and Mr. Lamaison that Brown sexually harassed her, PLAINTIFF called out of work on several occasions because she felt so uncomfortable working with Brown.

56.    PLAINTIFF notified one of her managers why she had called out of work.

57.    Nevertheless, DEFENDANT management subsequently *reduced* PLAINTIFF's hours over a two-week period from about 40 hours per week to about 16 hours per week.

58.    DEFENDANT management assigned PLAINTIFF to work fewer hours compared to similarly situated employees who had not complained of sexual harassment.

59.    After PLAINTIFF complained that her hours had been unfairly reduced, DEFENDANT management began scheduling PLAINTIFF again for about 40 hours per week.

60.    In or about May 2020, PLAINTIFF came to work one night and learned from her co-workers that DEFENDANT had fired Brown.

61.    During PLAINTIFF's employment, no member of DEFENDANT's management or DEFENDANT's  human resources department ever notified PLAINTIFF that DEFENDANT had investigated her complaints against Brown.

62.    During PLAINTIFF's employment, no member of DEFENDANT's management or DEFENDANT's  human resources department ever notified PLAINTIFF that DEFENDANT had decided to fire Brown.

63.    PLAINTIFF found the sexually offensive and retaliatory conduct that Brown directed at her to be humiliating, intimidating, threatening, and emotionally distressing, and such conduct interfered with her ability to do her job.

64.    PLAINTIFF was scared to go to work because she would have to face Brown and his outrageous sexually offensive conduct.

65.    Brown's sexually offensive conduct caused PLAINTIFF to lose sleep, made her depressed, and gave her anxiety.

66.    DEFENDANT discriminated against PLAINTIFF because of her sex with respect to creating and subjecting PLAINTIFF to a sexually hostile work environment and other terms, conditions and benefits of employment, in violation of Title VII, 42 U.S.C. § 2000e *et seq*.

67.    DEFENDANT discriminated against PLAINTIFF because of her sex and engaged in disparate treatment with respect to cutting PLAINTIFF's hours and other terms, conditions and benefits of employment, in violation of Title VII, 42 U.S.C. § 2000e *et seq*.

68.    DEFENDANT retaliated against PLAINTIFF because she complained of sexual harassment with respect to cutting PLAINTIFF's hours

and other terms, conditions and benefits of employment, in violation of Title VII, 42 U.S.C.  2000e *et seq*.

69.     DEFENDANT ratified Brown's outrageous sexually offensive and unwelcomed conduct toward PLAINTIFF by failing to take appropriate remedial action to remedy or stop Brown's conduct.

## CLAIMS AGAINST THE DEFENDANT

### Count 1
### *42 U.S.C. § 2000e-2(a)(1)*
### (Sexually Hostile Work Environment)

70.     Paragraphs 1-69 above are re-alleged and incorporated by reference as if fully set forth herein.

71.     By engaging in the conduct described above in Paragraphs 20-69, DEFENDANT unlawfully discriminated against PLAINTIFF because of her sex with respect to creating a sexually hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment, all in violation of Title VII.

72.     As a result of DEFENDANT's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

73.    PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to Title VII, and all in an amount to be determined as specified by law.

74.    PLAINTIFF's sex was a motivating factor in DEFENDANT's decision to create a sexually hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

75.    Alternatively, DEFENDANT, motivated in part by PLAINTIFF's sex and motivated in part by other reasons, discriminated against PLAINTIFF in violation of Title VII with respect to creating a sexually hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

**Count 2**
***42 U.S.C. § 2000e-2(a)(1)***
**(Sex Discrimination - Change in Work Conditions)**

76.    Paragraphs 1-69 above are re-alleged and incorporated by reference as if fully set forth herein.

77.    By engaging in the conduct described above in Paragraphs 20-69, DEFENDANT unlawfully discriminated against PLAINTIFF because of her sex with respect to cutting PLAINTIFF's hours and other terms, conditions and benefits of employment, all in violation of Title VII.

78.    As a result of DEFENDANT's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

79.    PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to Title VII, and all in an amount to be determined as specified by law.

80.    PLAINTIFF's sex was a motivating factor in DEFENDANT's decision to cut PLAINTIFF's hours and other terms, conditions and benefits of employment.

81.    Alternatively, DEFENDANT, motivated in part by PLAINTIFF's sex and motivated in part by other reasons, discriminated against PLAINTIFF in violation of Title VII with respect to cutting PLAINTIFF's hours and other terms, conditions and benefits of employment.

### Count 3
### *42 U.S.C. § 2000e-3(a)*
### (Retaliation)

82.    Paragraphs 1-69 above are re-alleged and incorporated by reference as if fully set forth herein.

83.     By engaging in the conduct described above in Paragraphs 20-69, DEFENDANT unlawfully retaliated against PLAINTIFF for complaining about Brown's sexually offensive conduct by cutting PLAINTIFF's hours and other terms, conditions and benefits of employment, all in violation of Title VII.

84.     As a result of DEFENDANT's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

85.     PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to Title VII, and all in an amount to be determined as specified by law.

86.     PLAINTIFF's complaint about Brown's sexually offensive conduct was the reason DEFENDANT cut PLAINTIFF's hours and other terms, conditions and benefits of employment, all in violation of Title VII.

## Count 4
### *Georgia Law*
### (Battery)

87.    Paragraphs 1-69 above are re-alleged and incorporated by reference as if fully set forth herein.

88.    As a result of the conduct above-described conduct, set forth above in Paragraphs 20-69, PLAINTIFF suffered multiple instances of battery in violation of Georgia law by DEFENDANT's employee, Brown.

89.    DEFENDANT's employee, Brown, intentionally made physical contact with a part of PLAINTIFF's body without PLAINTIFF's consent.

90.    As a result of the above-described conduct, PLAINTIFF has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

## Count 5
### *Georgia Law*
### (Invasion of Privacy)

91.    Paragraphs 1-69 above are re-alleged and incorporated by reference as if fully set forth herein.

92.    As a result of the above-described conduct, set forth above in Paragraphs 20-69, PLAINTIFF suffered invasion of privacy in violation of Georgia law by DEFENDANT's employee, Brown.

93.     The conduct of DEFENDANT's employee, Brown, constituted an intrusion upon PLAINTIFF's seclusion or solitude.

94.     As a result of the above-described conduct, PLAINTIFF has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

**Count 6**
***Georgia Law***
**(Ratification)**

95.     Paragraphs 1-69 above are re-alleged and incorporated by reference as if fully set forth herein.

96.     As a result of PLAINTIFF suffering the above-described conduct, set forth above in Paragraphs 20-69, including, but not limited to, battery and invasion of privacy, DEFENDANT is liable to PLAINTIFF under Georgia law for its ratification of the conduct of DEFENDANT employee, Brown.

97.     DEFENDANT ratified Brown's sexually offensive conduct toward PLAINTIFF by failing to take appropriate remedial action to remedy or stop Brown's conduct.

98.     As a result of the above-described conduct, PLAINTIFF has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

## Count 7
### *Georgia Law*
### (Nominal Damages)

99.    Paragraphs 1-69 above are re-alleged and incorporated by reference as if fully set forth herein.

100.   As a result of the above-described conduct, set forth above in Paragraphs 20-69, PLAINTIFF is entitled at a minimum, and in the alternative to an award of actual damages, to nominal damages.

101.   As a result of the above-described conduct, PLAINTIFF is entitled to an award of nominal damages pursuant to O.C.G.A. § 51-12-6.

## Count 8
### *Georgia Law*
### (Punitive Damages)

102.   Paragraphs 1-69 above are re-alleged and incorporated by reference as if fully set forth herein.

103.   The above-described conduct of DEFENDANT, set forth above in Paragraphs 20-69, showed willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences with regard to PLAINTIFF's allegations in this lawsuit

104.   As a result of DEFENDANT's conduct, PLAINTIFF is entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## Count 11
### *Georgia Law*
### (Litigation Expenses)

105.   Paragraphs 1-69 above are re-alleged and incorporated by reference as if fully set forth herein.

106.   By engaging in the above-described conduct, set forth above in Paragraphs 20-69, DEFENDANT acted in bad faith, has been stubbornly litigious and has caused PLAINTIFF unnecessary trouble and expense.

107.   As a result of such conduct by DEFENDANT, PLAINTIFF is entitled to her litigation expenses, including attorney's fees and costs related to this litigation, pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff JESSICA CHISENALL respectfully prays that this Court enter judgment in favor of PLAINTIFF and against DEFENDANT for:

A.   Lost wages, employment benefits, and other compensation to which PLAINTIFF is entitled, pursuant to Title VII, 42 U.S.C. § 1981a and Georgia law.

B.   Compensatory damages including, but not limited to, pecuniary losses, emotional pain, suffering, and inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and any other non-pecuniary losses or

intangible injuries to which PLAINTIFF is entitled, pursuant to Title VII, 42 U.S.C. § 1981a and Georgia law.

C.    Punitive damages to which PLAINTIFF is entitled, pursuant to Title VII, 42 U.S.C. § 1981a, and Georgia law.

D.    All reasonable attorney's fees and costs of the action through entry of a final non-appealable judgment, pursuant to Title VII, 42 U.S.C. § 1981a, and Georgia law, including all reasonable attorney's fees and costs for:

(1)    the time spent plus costs reasonably incurred throughout this action relating to the claims of PLAINTIFF under Title VII and Georgia law;

(2)    the time spent litigating both the entitlement to and amount of attorney's fees and costs incurred throughout this action plus costs of investigation and litigation reasonably incurred relating to the claims of PLAINTIFF under Title VII and Georgia law, whether in connection with any settlement, compromise, any accepted offer of judgment under Fed. R. Civ. P. 68, O.C.G.A. § 9-11-68 or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58;

(3)    the time spent litigating the fairness and reasonableness of any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68, O.C.G.A. § 9-11-68 or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58, and

(4)     the time spent explaining to PLAINITFF any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68, O.C.G.A. § 9-11-68 or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58.

E.     Pre-judgment and post-judgment interest on all amounts awarded pursuant to Title VII, 42 U.S.C. § 1981a, and Georgia law, including lost compensation, litigation expenses including attorney's fees, costs, and costs of investigation and litigation of this action.

F.     A declaration that DEFENDANT engaged in unlawful employment practices with respect to PLAINTIFF in violation of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 2000e-2(m), and 42 U.S.C. § 1981a.

G.     A declaration that DEFENDANT engaged in unlawful conduct in violation of Georgia law with respect to PLAINTIFF.

H.     All such other legal and equitable relief to which PLAINTIFF is entitled as a matter of law and equity.

I.     All such other and further relief as is deemed just and proper.

## **DEMAND FOR JURY TRIAL**

**Plaintiff demands a jury trial on all issues triable of right by a jury.**

Respectfully submitted,

/s/ *Alan H. Garber*
ALAN H. GARBER
Georgia Bar No. 283840

ahgarber@garberlaw.net
MARC N. GARBER
Georgia Bar No. 283847
mngarber@garberlaw.net
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
(678) 560-6685
(678) 560-5067 (facsimile)

***Attorneys for the Plaintiff***